N. W. WHITLEY, Plaintiff-Appellee, Cross-Appellant,

v.

George W. SEIBEL, individually and as a police officer of the Chicago Police Department, Defendant-Appellant, Cross-Appellee.

Nos. 80–2522, 80–2565.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1981.

Decided March 24, 1982.

Cheryl L. Smalling, Corp. Counsel, Chicago, Ill., for defendant-appellant/cross-appellee.

Donald T. Bertucci, Chicago, Ill., for plaintiff-appellee/cross-appellant.

Before CUMMINGS, Chief Judge, SPRECHER and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

N. W. Whitley was arrested and charged with crimes for which he had a complete alibi defense. Nonetheless he remained in the Cook County Jail from October 14, 1974, the date of his arrest, until February 3, 1975, when the state asked leave to nolle prosequi the criminal charges and the case was dismissed. Thereafter Whitley filed a damage action under 42 U.S.C. § 1983. We reversed the first judgment in Whitley's favor, *Whitley v. Seibel*, 613 F.2d 682 (7th Cir. 1980) (*Whitley* I), for inadequate jury instructions on an important issue in the case. A new trial ensued, before Judge McGarr, and the jury awarded Whitley $60,000 in damages. The court also awarded Whitley's attorneys $10,000 in fees under

42 U.S.C. § 1988. The defendant Seibel now appeals a second time, arguing that (1) Whitley is collaterally estopped from bringing a Section 1983 suit under *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308; (2) the jury instructions in the second trial did not cure the defect from which the earlier proceedings had suffered; and (3) the damages awarded were excessive and not supported by the evidence. The plaintiff's cross-appeal asks us to find that the trial judge abused his discretion in awarding only $10,000 in fees. We affirm the decision below in all respects.

### I

The facts that underlie Whitley's lawsuit are fully set out in our earlier opinion, *Whitley I*, 613 F.2d at 684–685. Only those relevant to our resolution of this appeal are repeated here. Any ambiguities in the evidence are resolved as the jury must have resolved them in reaching its decision.

Whitley was arrested on a minor traffic charge on October 7, 1974. As he was being taken into custody, a passerby identified him as the perpetrator of an armed robbery and sexual assault that had occurred on the north side of Chicago on the afternoon of October 3. At the station house, the victims of the crimes agreed that Whitley was their assailant, although they had tentatively identified another man earlier. Whitley told Officer Seibel that the identification must be mistaken: he had been at the Des Plaines office of an insurance company on October 3, picking up a claim check. He gave Seibel the business card of the employee he had seen there and the name and address of a shoe store in Chicago where he worked part-time and had cashed the check. On the advice of an assistant state's attorney, Seibel decided not to arrest Whitley for the robbery and assault until the alibi could be checked out and the conflicting identifications resolved.

On October 14, Seibel arrested Whitley for the robbery and assault. In the interval between the first and second arrests Seibel had called a telephone number Whitley had given him for the insurance company and

found it inaccurate. He had also made inquiries in the shoe stores within a two-block area of Broadway, including the one where Whitley was an occasional employee, without finding out anything about Whitley. He had not pursued the eyewitness identification further, or sought more information from Whitley. Although that was the extent of his investigation, Seibel told two assistant state's attorneys, one of whom presented the state's case at the preliminary hearing, that he had checked out Whitley's alibi and that Whitley was definitely not in Des Plaines on the afternoon of October 3.

On November 14, 1974, Whitley went before Judge Wayne Olson in Branch 44 of the Municipal Court. The purpose of the hearing Judge Olson conducted was to determine whether there was probable cause to believe that the crimes had been committed and whether there was probable cause to believe that Whitley had committed them. Appearing at that hearing were the assistant state's attorney; the victims, who were by now prepared to identify Whitley positively; Whitley; and Steven Bernstein, the attorney Whitley had retained two weeks earlier. Although Whitley was entitled under Illinois law to present evidence of his alibi defense, he did not do so. Judge Olson found probable cause to bind Whitley over to the grand jury for indictment.

After the preliminary hearing, Whitley's attorney continued the efforts he had begun earlier to confirm Whitley's alibi. In January, Mr. Bernstein presented the information he had collected to yet another assistant state's attorney. After some consultation the prosecution moved, on the day Whitley's trial was scheduled to begin, to drop the case. Throughout this time Whitley remained incarcerated, unable to post the bond set initially at $10,000 but raised after a bond hearing on October 15 to $25,000.

### II

Seibel's first line of attack is that Whitley's Section 1983 suit is basically an action for false arrest and that Whitley is

collaterally estopped[1] from bringing it by Judge Olson's finding of probable cause in the preliminary hearing. When this same argument was made in *Whitley* I, we rejected it on the basis that the issues in a preliminary hearing and in a Section 1983 suit were not the same. 613 F.2d at 685, relying on *Brubaker v. King*, 505 F.2d 534 (7th Cir. 1974). The Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 102 n. 18, 101 S.Ct. 411, 419 n. 18, 66 L.Ed.2d 308 has explicitly disapproved of our reasoning in *Brubaker*: if a Section 1983 plaintiff must show both that an arrest was illegal and that the arresting officer had no reasonable, good-faith belief in its legality, the determination that an arrest is supported by probable cause (and therefore legal) logically undercuts the Section 1983 claim.

Seibel reads the Supreme Court's criticism of *Brubaker* as a directive to apply collateral estoppel to bar Whitley's suit. We take a narrower view of the significance of *Allen*'s footnote 18. *Allen* holds that collateral estoppel is as applicable to Section 1983 suits as it is to other kinds of litigation; *Allen* does not adopt any "new, more stringent doctrine of collateral estoppel." 449 U.S. at 95 n. 7, 101 S.Ct. at 415 n. 7. Traditionally the criteria that must be satisfied before collateral estoppel can appropriately be invoked are:

whether the issue sought to be concluded is the same as that involved in the prior action; was litigated in the prior action; was in fact judicially determined in the prior action; and whether the judgment in the prior action was dependent upon the determination made of the issue. Only if *all four* of these questions are answered in the affirmative is the issue concluded under the doctrine of collateral estoppel.

1B Moore's Federal Practice, ¶ 0.443[1] (1965) (footnotes omitted, emphasis added)

At most, the footnote in *Allen* suggests that we erred in thinking that there could never be identity of issues in a preliminary hearing and a Section 1983 suit. Our task here is to examine the criteria as they apply to Whitley's suit.[2]

### A. Identity of Issues

■ The first step is to determine what the issues were in the preliminary hearing and in Whitley's Section 1983 suit. As noted above, Judge Olson was required to decide whether there was probable cause to believe that the crimes had been committed by Whitley. In practice police records and eyewitness testimony would often be dispositive.[3] Whitley's Section 1983 suit was based on two specific derelictions by Seibel: his failure to investigate in reasonable fashion a plausible alibi given by a person in custody;[4] and his misrepresentations to the

---

1. A succinct definition of collateral estoppel and *res judicata* (merger and bar) was given more than half a century ago by Learned Hand:

 A judgment may be a merger or bar, or it may be an estoppel. For the first, the cause of action must be the same; for the second, they may be as different as possible. On the other hand, the merger or bar extends, not only to all matters pleaded, but to all that might have been, while the estoppel extends only to facts decided and necessary to the decision. All this is very old law.

 *Irving National Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926).

 The passage of time necessitates some qualification. Merger and bar apply only to the original litigants or their privies. Collateral estoppel can be invoked by and against new litigants. It can be used as a shield by a new defendant against a plaintiff who was a party to the former litigation, *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,

402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. Or it can be used as a sword by a new plaintiff against a defendant who was a party to the former litigation, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552. It can never be used as a sword against a party who has not previously had his day in court.

2. Our discussion of Illinois pre-trial procedure throughout the opinion is based on the law as it existed at the time of Whitley's arrest and incarceration.

3. Direct testimony of Kent Brody (former assistant public defender), Tr. 585; cf. cross-examination of Judge Olson, Tr. 769.

4. The trial court assumed, based on the discussion in *Whitley* I, 613 F.2d 685–686 (distinguishing *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433) that this theory was

prosecuting authorities that he had checked the alibi and found it to be false.[5] Thus this Section 1983 suit attacked the integrity, rather than the sufficiency, of the evidence. Unlike *Brubaker*,[6] it did not seek to relitigate the probable cause finding, but charged that the arresting officer's bad faith vitiated the finding. Although we concede that there will be identical issues in a preliminary hearing and a Section 1983 suit when only the legality of the arrest is at issue, we do not find that proposition applicable to this case.

B. *Litigation in the Prior Proceeding*

Whitley did not put on his alibi defense at the preliminary hearing, and so did not attack the veracity of the state's case against him. Ordinarily an issue that is not litigated in one proceeding is not barred later—that is a basic difference between claim preclusion (*res judicata*) and issue preclusion (collateral estoppel).[7] Seibel argues in effect that Whitley waived his alibi defense by not raising it.

There is some authority in this Circuit for treating the failure to raise an issue as tantamount to waiver and for giving the waiver collateral estoppel effect.[8] But there must be "reason to believe that the failure to litigate the matter in fact was a recognition of the opposing claim." *Palma v. Powers*, 295 F.Supp. 924, 936 (N.D.Ill. 1969). In *Palma*, that inference was possible: the allegedly illegal search had produced all the evidence against defendants charged with violating Illinois gambling laws, and the defendants went through the entire state criminal trial without ever seeking to have the evidence suppressed. They had every incentive to raise the issue to ward off conviction, and the fully adversarial hearing on a motion to suppress gave them the opportunity to do so. Accordingly, their Section 1983 claim, based on the illegal search, was precluded.

We have no such assurance about Whitley's silence. He surely did not admit the lack of an alibi. Indeed his experience was so unnerving precisely because he knew he was innocent and had given the police information to confirm his innocence, but his imprisonment still continued. Nor is the preliminary hearing comparable to a suppression hearing. It is a relatively summary proceeding, designed only to reach an interim decision in the process of bringing a defendant to trial. The suspect has no right to discover what is in the prosecutor's

---

still viable on remand. Seibel does not challenge that assumption on appeal.

5. On October 8, Seibel wrote in a report that he had "subsequently found that the offender was not in the location claimed and, therefore, had no alibi." Tr. 260. On October 14, he again wrote, "The undersigned was able to establish that Whitley was not where he had claimed at the time of the occurrence." Tr. 261. Whitley's October 14 arrest was approved on the basis of this representation, and Seibel's reports were instrumental in the state's case at the preliminary hearing.

The district court instructed the jury that even if it found poor investigation and factual misrepresentation, Seibel's good-faith belief that he had acted reasonably under the circumstances would be a complete defense. Plaintiff's instruction 2 (reprinted in Joint Appendix). Seibel does not challenge the jury's decision that his qualified immunity was exceeded in this case.

6. In *Brubaker*, the Section 1983 plaintiff had been arrested as he picked up a parcel of hashish at an Indiana post office. He made bond, but was later rearrested with a warrant. Each arrest was considered by a different judge, and each judge found probable cause. Criminal charges were later dismissed by the state. The only issue in the Section 1983 suit appears to have been the existence *vel non* of probable cause.

7. See note 1 *supra*. Res judicata bars " 'not only * * * every matter which was actually offered and received to sustain the demand or to make out a defense, but also * * * every ground of recovery or defense which might have been presented.' " *Harper Plastics v. Amoco Chemicals Corp.*, 657 F.2d 939, 945 (7th Cir. 1981), quoting *Mendez v. Bowie*, 118 F.2d 435, 440 (1st Cir. 1941), certiorari denied, 314 U.S. 639, 62 S.Ct. 76, 86 L.Ed. 513.

8. This authority is, however, soundly criticized in G. Hazard, *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems*, 66 Cornell L.Rev. 564, 581–585 (1981). Professor Hazard served as Reporter for the *Restatement (Second) of Judgments*.

arsenal,[9] or to appeal the finding of probable cause.[10] In fact, the preliminary hearing can be dispensed with entirely and the case taken directly to a grand jury.[11] Under these circumstances a suspect may not have had time to prepare his case when the preliminary hearing is held, or may have strategic reasons for waiting until trial to make his defense. There is thus no basis for inferring that a decision not to raise an issue amounts to an admission that the issue's converse is true.

## C. Other Factors

Judge Olson had no occasion to consider Whitley's alibi or the quality of Seibel's investigation and reports. The third and fourth criteria—that the issues be determined and that the determination be necessary to the judgment—are clearly unmet. However, even if Judge Olson had made rulings, it would be almost impossible to tell whether a finding of probable cause necessarily depended on those rulings.

> [A probable cause determination] does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt.
>
> Gerstein v. Pugh, 420 U.S. 103, 121, 95 S.Ct. 854, 866, 43 L.Ed.2d 54.

Because the state's burden of proof is so low, a variety of issues could be resolved in favor of the suspect without necessitating a finding of no probable cause.

## D. Conclusion

Nothing in Allen v. McCurry requires us to depart from the traditional precept that a party is not estopped to raise issues that he has had less than a "full and fair opportunity" to litigate in a prior proceeding. 449 U.S. at 95 n. 7, 100–101, 101 S.Ct. at 415 n. 7, 418. We doubt that collateral estoppel would ever be appropriate solely on the basis of a preliminary hearing;[12] we hold that it is certainly not appropriate on the facts of this case.

## III

■ Although we are not willing to accord preclusive effect to the preliminary hearing, we agree that it has important factual and legal consequences for this Section 1983 suit. At the first trial the jury was instructed that

> The failure of Mr. Whitley or his attorney to assert an alibi at the preliminary hearing is of no significance to your determination here because it would avail them nothing to have done so. The judge would have been acting improperly had he dismissed the case at that juncture on the basis that there was an alibi. That's not his function.

---

**9.** Testimony of Judge Olson, Tr. 771–772. The arrest report or "pink sheet" attached to the outside of the file was available, but there was no way to compel the production of investigators' supplementary reports. State's attorneys did sometimes turn supplementary reports over to defense lawyers voluntarily.

**10.** See J. Scarboro and J. White, Constitutional Criminal Procedure 125 (1977).

**11.** See Judge McGarr's remarks. Tr. 423–424.

**12.** Allen itself involved a motion to suppress. The criminal conviction, including the ruling on the motion, was appealed to the intermediate Missouri court. 449 U.S. at 91, 101 S.Ct. at 413. A sampling of post-Allen decisions shows collateral estoppel applied in the following, distinguishable contexts: probate court decisions, appealed, foreclose Section 1983 suit alleging bias by probate judge and conspiracies of various sorts, Tonti v. Petropoulous, 656 F.2d 212

(6th Cir. 1981); guilty plea in tax evasion case forecloses relitigation of fraud in civil suit for penalty, Fontneau v. United States, 654 F.2d 8 (1st Cir. 1981); state habeas proceedings, if they satisfy the standard of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, preclude Section 1983 suit to expunge IRS disbarment based on allegedly unconstitutional criminal conviction, Silverton v. Dept. of Treasury, 644 F.2d 1341 (9th Cir. 1981), certiorari denied, —— U.S. ——, 102 S.Ct. 393, 70 L.Ed.2d 210; disbarment proceedings bar relitigation of factual issues but not constitutional claims in Section 1983 suit against the justices of the Iowa Supreme Court, In re Randall, 640 F.2d 898 (8th Cir. 1981).

There is a thoughtful discussion of the problems of collateral estoppel based on criminal proceedings in Richardson v. Fleming, 651 F.2d 366, 373–375 (5th Cir. 1981) (dictum).

*Whitley* I, 613 F.2d at 686

We held that such an instruction was prejudicial error because it was likely to obscure three issues: (1) the extent of damages for which the defendant could be liable; (2) the factual determination of how much information Whitley actually gave Seibel about his alibi; and (3) the defendant's burden of proof, which could be distorted if the jury thought—contrary to *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433—that Seibel had an absolute duty to investigate every claim of innocence. On remand we required that the jury "be properly instructed on the [nature of] the preliminary hearing and permitted to consider plaintiff's failure to offer his alibi." *Whitley* I at 687–688.

Seibel now argues that the second trial judge did not follow our directions. Judge McGarr refused defendant's instructions 27 and 28, which repeated verbatim the language of Ill.Rev.Stat. 1973, chap. 38 §§ 109–3(a) and (b).[13] Instead he gave plaintiff's instruction 31:

> The finding of probable cause at the preliminary hearing does not, in any way, mean that the defendant Seibel had probable cause to arrest the plaintiff and charge him with the offenses.
>
> You may consider, in the light of all the evidence in the case, whether the plaintiff could or should have offered the alibi at the preliminary hearing, and whether this would have resulted in a reduction of the time that plaintiff was incarcerated.

Seibel's objection to the first paragraph is that it does not tell the jury that, "[a]s stated in *Allen*, the finding of probable cause in the preliminary hearing is a *binding determination* that probable cause existed for the arrest." Br. 11 (emphasis added). Part II *supra* shows that Seibel overestimates the effect of *Allen*. Seibel also objects generally that the instruction failed to apprise the jury of "the legal mechanics of preliminary hearings in Illinois." *Id.* It is true that the instruction does not speak in technical language; it is not true that the jury was inadequately informed about how preliminary hearings work or about the consequences of Whitley's silence.

Judge McGarr did not disregard our mandate. He improved on it. The jury heard testimony from all three of the assistant state's attorneys involved in Whitley's case, including the one who presented the state's evidence before Judge Olson;[14] from an assistant public defender who had participated in roughly five hundred preliminary hearings in Judge Olson's courtroom;[15] and from Judge Olson himself.[16] Mr. Bernstein testified and was vigorously cross-examined about the quality of his representation of Whitley at the preliminary hearing.[17] The testimony as a whole served to educate the jury in the "legal mechanics" of Illinois criminal procedure, and the instruction invited them to apply that education to the central issues in this case.

Seibel apparently thinks that the instruction had to be misleading because the jury did not excuse his conduct or limit Whitley's damages to the period before the prelimi-

---

13. Ill.Rev.Stat. 1973, chap. 38 § 109–3 provides:

 (a) The judge shall hold the defendant to answer to the court having jurisdiction of the offense if from the evidence it appears there is probable cause to believe an offense has been committed by the defendant.

 (b) If the defendant waives preliminary examination the judge shall hold him to answer and may, or on the demand of the prosecuting attorney shall, cause the witnesses for the State to be examined. After hearing the testimony if it appears that there is not probable cause to believe the defendant guilty of any offense the judge shall discharge him.

Defendant's instruction 27 quoted (a); instruction 28 quoted (a) and the second sentence of (b).

14. Richard Hansen, who told Seibel to check the alibi and resolve the identification problems on October 7, Tr. 96–146; Ernest Bloomquist, who approved the filing of charges against Whitley on October 14, Tr. 146–162; Timothy Lee, who conducted the state's case at the preliminary hearing, Tr. 413–459.

15. Kent Brody, Tr. 580–621.

16. Judge Wayne Olson, Tr. 754–784.

17. Tr. 639–733 (cross-examination at 696–723).

nary hearing. But it was consistent for the jury to follow the instruction and still not lay the blame at Whitley's door. As Mr. Bernstein and Judge Olson agreed, presenting an unconfirmed alibi defense presented grave risks of later impeachment.[18] Asking for a continuance might have resulted in a prosecutorial decision to take the case directly to the grand jury, and neither Whitley nor his lawyer could be present at the grand jury proceedings.[19] Finally any delay attributable to Whitley would have stopped the running of the time within which the state had to try him, starting an entirely new limitations period.[20] In short, we are satisfied that Judge McGarr gave the jury an appropriate instruction, and that the jury's response to it was within their province as finders of fact.

## IV

Defendant's third ground of appeal is that the award of $60,000 in compensatory damages for 113 days of imprisonment was excessive. By turns Seibel hints that there was no evidence, no competent evidence, or no sufficient evidence to support the award.[21]

 Our standard of review is narrow. Providing that the appropriate legal criteria were used—and apart from the instruction (Part III *supra*) they are not challenged— the actual measurement of damages is an exercise in fact-finding, which we are not permitted to second-guess unless "after reviewing the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Busche v. Burkee*, 649 F.2d 509, 518 (7th Cir. 1981), certiorari denied, —— U.S. ——, 102 S.Ct. 396, 70

L.Ed.2d 212, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. We do not have that conviction here. Whitley himself testified about nightmares, insomnia, and nausea after his release from jail.[22] Howard Harris, his erstwhile employer, told the court that Whitley was a changed man, given to depression, vagueness, and tears.[23] Denise Broom, who had lived with Whitley for some time before and after his arrest and had borne him a son, described his nausea, cold sweats, outbursts of crying, and increased irascibility after his release. She finally had to leave him in 1976, taking their child with her.[24] Seibel dismisses this testimony as either interested (Br. 13) or incompetent (Br. 12). We do not see why the people who knew Whitley best before and after the events should have to be characterized as interested. As to the absence of medical or psychiatric testimony,

> While such testimony could have strengthened [the plaintiff's] case, its absence from the record is not fatal to his claims. As the Supreme Court stated in *Carey v. Piphus*, 435 U.S. 247 at 264 n.20, 98 S.Ct. 1042 at 1052 n.20, 55 L.Ed.2d 252, * * * "[a]lthough essentially subjective, genuine injury in this respect [mental suffering or emotional anguish] may be evidenced by one's conduct and observed by others."

> *Busche, supra,* 649 F.2d at 519 n. 12

Seibel has a farrago of lesser complaints. Neither wages lost nor attorney's fees paid up to the dismissal of charges were proved, he says. But the amount of fees paid ($575.65) was proved at trial,[25] and the jury was clearly instructed that Whitley did not claim damages for lost wages.[26] The de-

18. Bernstein, Tr. 665–666; Olson, Tr. 780–781.

19. Bernstein, Tr. 714–715; Olson, Tr. 770–771 (but direct indictment "rare").

20. Bernstein, Tr. 694; Olson, Tr. 783.

21. At oral argument counsel for Seibel took the odd position that because no amount of money could compensate for Whitley's injury, the damages awarded should be reduced.

22. Tr. 522.

23. Tr. 473–474.

24. Tr. 323–324.

25. Tr. 690–692.

26. Plaintiff's instruction 29, reproduced in the unpaginated Joint Appendix. Judge McGarr also emphasized the point to the jury. "Mr. Whitley * * * is not making any claim for lost wages as a result of his being incarcerated instead of being able to work at Allen Shoes. So the question of his salary there, part-time,

fense was also hampered, according to Seibel, by not being able to cross-examine Whitley about earlier arrests and a prior imprisonment that might have caused some of his alleged harm. The record shows that Whitley had been arrested only for the traffic offense that began his troubles here, and for possession of two marijuana cigarettes in 1973. The much-vaunted earlier imprisonment was a three-day stay in the Cook County Jail, apparently on the marijuana charge.[27]

Finally, we have noted a certain irony in Seibel's complaints about the sufficiency of the evidence, since the defendant persuaded the trial court to exclude all testimony about conditions in the Cook County Jail at the relevant period.[28] Having eliminated the possibility of detailed proof of the harm done to Whitley, Seibel cannot now attack the quality of the evidence that was received.

## V

The attorneys who represented Whitley asked Judge McGarr to award them fees for 277 hours of work on Whitley's behalf in the second trial. They stated that an appropriate hourly rate for civil rights lawyers of their caliber was $110 an hour, and that a multiplier would be suitable as an incentive or bonus. Judge McGarr awarded them only $10,000, to be divided in whatever manner they chose.

We review a district court's fee decision under 42 U.S.C. § 1988 only for abuse of discretion. As a practical matter, it is a great help to the reviewing court if the district judge gives a detailed statement of the reasons for his decision, so that we can understand how it was made. But the district judge is not required to couch fee decisions in exactly the terms we first outlined in *Waters v. Wisconsin Steel Works*, 502 F.2d 1309 (7th Cir. 1974), certiorari denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823.

> The factors set out in *Waters* and adopted by this court in § 1988 cases in *Muscare v. Quinn*, 614 F.2d 577 (7th Cir. 1980), are guidelines. It is not required that each of the enumerated factors be considered and passed on specifically. The award is to be based on the totality of the case in light of the purpose of the act: "to permit and encourage plaintiffs to enforce their civil rights."
>
> *Coop v. City of South Bend*, 635 F.2d 652, 655 (7th Cir. 1980) (citation omitted)

Our reading of Judge McGarr's order convinces us that he relied on the following factors to arrive at the $10,000 figure:

(1) $100 an hour is not facially unreasonable for trial time, but office time should be billed at a lower rate. Only about one-fourth of the total hours represented trial time, according to the affidavits submitted by Whitley's attorneys.[29]

(2) There was some duplication of effort between the two lawyers. The defendants challenged some portion of 56 hours on this basis.[30]

(3) The case redressed an individual wrong, rather than benefiting a class or vindicating the public interest. The policy underlying fee awards may be less compelling in such a suit.[31]

(4) Fees are also less necessary when the judgment itself is substantial and there is a contingent fee agreement between lawyer and client. Here, as we learned at oral argument, Whitley had agreed to pay Bernstein one-third

---

full-time, etc., is not of any consequence to this case." Tr. 634–635.

**27.** Tr. 462–466, 575.

**28.** Tr. 734–736.

**29.** The affidavits and time records of the lawyers are set out in the Joint Appendix. At oral argument counsel inadvertently reversed the figures for in-court and office time.

**30.** Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees 9–13 (reprinted in Joint Appendix).

**31.** See, *e.g., Hughes v. Repko*, 578 F.2d 483, 492 n. 5 (3d Cir. 1978) (Garth, J., concurring).

of any award. Presumably Messrs. Bertucci and Buffardi conducted the trial because of Mr. Bernstein's importance as a witness for Whitley.[32]

We are persuaded that these factors represent a reasonable basis for determining the award of fees and that Judge McGarr's application of them was a sound exercise of his discretion. We note that this case is distinguishable from *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 585 (7th Cir. 1981), where the lack of detailed time records combined with the district judge's unexplained reduction of the amount to make appellate review of the fee decision in a patent case impossible.

The judgment from which appeal is taken is affirmed in its entirety, with costs to Whitley on the appeal (No. 80–2522) and to Seibel on the cross-appeal (No. 80–2565).

**32.** American Bar Association, Code of Professional Responsibility, EC 5–9; DR 5–101(B), 5–102 (1978).