Robert **LIPSEY**, Plaintiff,

v.

**CHICAGO COOK COUNTY CRIMINAL JUSTICE COMMISSION, et al.,**
**Defendants.**

No. 81 C 2232.

United States District Court,
N.D. Illinois, E.D.

June 24, 1986.

Robert K. Mayer, Shelly Waxman, Shelly Waxman & Associates, South Haven, Mich., Richard Salas, Thousand Oaks, Cal., Daniel G. Donovan, Leahy & Donovan, Chicago, Ill., for plaintiff.

Moshe Jacobius, Asst. Atty. Gen., Chicago, Ill., for Illinois Human Rights Com'n, David Strauss and Richard J. Puchalski.

James D. Montgomery, Robert L. Janega, Corp. Counsel, Chicago, Ill., for Chicago Cook County Criminal Com'n, Daniel J. O'Connell and Margie Leslie.

## ORDER

NORGLE, District Judge.

This court's last encounter with this case was on defendants' motion for summary judgment based on collateral estoppel and *res judicata*. Defendants renew their motion for summary judgment and seek reconsideration. The defendants argued, in their previous motion, that a decision adverse to the plaintiff by the Illinois Human Rights Commission (Commission) precluded plaintiff from raising issues in this case that were previously decided by the Commission and barred him from maintaining this action in federal court through the doctrine of administrative *res judicata*. *See Buckhalter v. Pepsi-Cola Gen. Bottlers*, 768 F.2d 842 (7th Cir.1985).

It seemed reasonably clear that the complaint's sole remaining claim was based on a violation of the first amendment. In arguing in favor of collateral estoppel and *res judicata*, defendants did not discuss the established burdens of proof on the first amendment claim. Defendants argued instead that plaintiff's failure to succeed on an ordinary discrimination claim under Title VII or the Illinois Human Rights Act precluded success on a first amendment claim. Specifically, the defendants argued that because the Commission found Lipsey was fired for a legitimate, nondiscriminatory reason (insubordination) he could not prevail on a first amendment claim. The court rejected the parallel suggested by defendant because of the differences between the burdens of proof in the two actions, the different rights involved, and the distinct policy justifications underlying them. *Lipsey v. Chicago Cook County Crim. Justice Comm'n*, 629 F.Supp. 955, 957 n. 2 (N.D.Ill.1986). The court sees no reason, and defendants offer no new reasons on reconsideration, to alter that decision.

■ It is also clear that in discussing collateral estoppel and *res judicata* the defendants failed to keep the requirements of each doctrine distinct. They continue to treat them as one. *See Motion to Reconsider* at 13–14 "(re: administrative *res judicata* and/or collateral estoppel)." As the court noted earlier, the Commission did not consider the first amendment issue. It did not inquire into the nature of the speech, its content or the manner in which it was communicated in addressing Lipsey's race discrimination claim. *See Connick v. Meyers*, 461 U.S. 138, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983); *Yoggerst v. Hedges*, 739 F.2d 293, 296 (7th Cir.1984). Nor did the Commission consider whether Lipsey's statement concerned a matter of public concern. *Pickering v. Board of Education*, 391 U.S. 563, 574, 580, 88 S.Ct. 1731, 1737–38, 1740–41, 20 L.Ed.2d 811 (1968). Nor did the Commission attempt to balance whether the interest of the public employee in commenting on a matter of public concern outweighed the interest in the employer to promote effective and efficient public service. *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1256 (7th Cir.1985); *Knapp v. Whitaker*, 757 F.2d 827, 838–39 (7th Cir.1985). Simply stated, the Commission did not actually or necessarily decide *any* of the dispositive issues

relating to a first amendment claim. Indeed, it never even considered the claim. Thus the court concluded that collateral estoppel could not preclude[1] Lipsey's first amendment claim. *Lipsey,* 629 F.Supp. at 954–55. On reconsideration, the court sees no reason to disturb that conclusion either.

In the prior order the court then considered whether *res judicata* barred this claim. Rather than discuss all the requirements of *res judicata* the court singled out one, an identity of the cause of action between the prior proceeding with the present one. *Lipsey,* 629 F.Supp. at 957. The court concluded, the court believes correctly, that the first amendment claim was distinct from the race discrimination claim.

■ The doctrine of *res judicata,* unlike collateral estoppel, bars claims which were brought in a prior action and those which could have been brought and decided in a prior action. *Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir.1982); *Whitley v. Seibel,* 676 F.2d 245, 248 (7th Cir.1982). The central issue for *res judicata* purposes in this case then is whether Lipsey's race discrimination claim is the same cause of action as his first amendment claim.

The "core of operative facts" test has been adopted in this Circuit. *Alexander v. Chicago Park Dist.,* 773 F.2d 850, 854 (7th Cir.1985); *Lee v. City of Peoria,* 685 F.2d at 198. In *Lee* the Seventh Circuit stated:

[A] cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned. Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action. If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action as-

serted, and *res judicata* bars the latter action.

*Lee,* 685 F.2d at 101, *quoting Morrise v. Union Oil of California,* 96 Ill.App.3d 148, 51 Ill.Dec. 770, 772, 421 N.E.2d 278, 285 (1981); *see also Frier v. City of Vandalia,* 770 F.2d 699, 703 (7th Cir.1985) (Swygert, J., concurring).

To make out a *prima facie* case under Title VII or the Human Rights Act for race discrimination a plaintiff must prove 1) he is a member of a protected class, 2) similarly situated with members of the unprotected class, 3) but was treated differently from members of the unprotected class. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If defendants can state such a reason, the burden shifts back to plaintiff to prove the articulated reason was a pretext for its discriminatory action. *Ramsey v. American Air Filter, Co.,* 772 F.2d 1303, 1307 (7th Cir.1985); *cf. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These are precisely the facts and inferences that plaintiff and defendant attempted to establish before the Commission.

Lipsey proved he was black and that he was in the same position as other assistant planners working for defendants. He demonstrated that just prior to his dismissal he wrote a letter to his superior complaining that he was underpaid and that the reason he was underpaid was because he was black. Lipsey was suspended and ultimately terminated because of insubordination. In concluding the insubordination was not merely pretextual, the Commission examined Lipsey's history of poor performance and recordkeeping of time spent on projects. Lipsey had been subjected to disciplinary actions on two prior occasions and had previously been absent from his job

---

1. That does not mean that defendants may not rely on established facts determined by the Human Rights Commission. Both plaintiff and defendant may estop the other from contesting or denying those facts which were decided by the Commission. *See generally Restatement of Judgments* § 61 (1942); *Jones v. City of Alton,*

757 F.2d 878, 884–85 (7th Cir.1985). This court simply concludes that collateral estoppel (issue preclusion) does not operate as a bar where the critical issues in the present case were not actually or necessarily decided (or even addressed) in the prior litigation.

without requesting an absence. In examining all of this evidence, the Commission concluded that Lipsey was indeed terminated because of his insubordination and because of the agency's "general dissatisfaction with his job performance." Order and Decision, No. 1979 CF 0261, August 11, 1982.

To prevail on a first amendment claim plaintiff will have to prove that (1) he spoke on a matter of public concern and (2) that his interest in speaking on the matter outweighed the interest of the employer in promoting effective and efficient public service. *Patkus*, 769 F.2d at 1256. Was plaintiff's letter a protectible complaint regarding a racially discriminatory policy practiced in an agency of state government? Or did the letter reflect a personal gripe about his own disparate treatment? Or was it a salary dispute that escalated to charges of racial discrimination when the pay raise was denied? If any of these matters are protectible as matters of public concern, did the agency's interests outweigh the interest in speaking on the matter? A legitimate, nondiscriminatory reason for discharging an employee may not always provide a sufficient justification for discharging a person who has exercised first amendment rights. This case bears out that observation.

Mr. Lipsey had a history of keeping poor records of the time spent on projects. He had been reprimanded for keeping poor records and had been subjected to disciplinary action for being absent from work without notice or permission. But Lipsey was not discharged. It was only when he alleged his supervisors' actions toward him (in disciplining him, giving him less desirable assignments, and underpaying him) were motivated by their dislike for his race, that he was suspended. Under the first amendment balancing analysis the court must inquire whether the agency would have kept him on but for his protected speech, and the prior history of tolerance indicates they may have, *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274 at 284, 97 S.Ct. 568, 574–75, 50 L.Ed.2d

471, or whether the agency interest in maintaining discipline outweighs the interest in allegations of race discrimination practiced by the agency. Proof relevant to this balancing might involve the manner of the communication, the content of the statements, a history of the department's disciplinary problems, the importance of discipline in the department's operations, the prior relations between the plaintiff and his immediate supervisor, and perhaps other incidents of suppressing criticism of agency policies and decisions. While some of the evidence in both claims would undoubtedly overlap, much of it would not. It would not end the matter to conclude that the agency discharged Lipsey because of a "general dissatisfaction with his job performance."

In short, the first amendment claim now advanced is simply a different cause of action from the race discrimination claim. A set of operative facts different from the race discrimination claim is needed to sustain the first amendment claim. The plaintiff and defendant will need to produce different evidence on each claim and they will bear distinct burdens of persuasion on certain elements of proof.

This conclusion is buttressed by the unavailability of proceeding on a first amendment claim before the Illinois Human Rights Commission. The Human Rights Act was passed in part to remedy discrimination in the workplace, in the purchase of property, or in access to financial aid on account of race, color, religion, sex, national original, ancestry, age, marital status, physical or mental handicap, or discharge from military service. Ill.Rev.Stat. ch. 68, § 1–102(A) (1985). The Act was also intended to secure the rights guaranteed in §§ 17, 18, and 19 of Article I of the Illinois Constitution. *Id.* at § 1–102(C). Those sections of the Illinois Constitution proscribe discrimination in employment and the sale of property (§ 17), on the basis of sex (§ 18), or on the basis of handicap (§ 19). The Act, however, does not provide a remedy for a violation of the exercise of first amendment rights or the state consti-

tutional parallel. Ill. Const. Art. I, §§ 4, 5. Thus, Lipsey could not have brought his first amendment claim before the Commission. The court concludes, therefore, that its original decision was correct: the first amendment claims and the race discrimination claims are distinct causes of action. Because there is no identity of the causes of action in the prior administrative proceeding and this proceeding, administrative *res judicata* can not bar this claim.

■ That does not conclude this motion for summary judgment, however. On this motion defendants argue, for the first time, that summary judgment on the first amendment issue should be granted in defendant's favor because Lipsey's comments were not on matters of public concern. Therefore, he is not entitled to first amendment protection for his statement. The court agrees.

As this court noted in its original order, the law and the burdens of proof established in *Pickering* and *Mt. Healthy* and their progeny would likely resolve this dispute. The Supreme Court's recent decision in *Connick v. Meyers* establishes the analysis this court must use in deciding 1) whether speech of a public employee raises first amendment implications and 2) whether the public employer's interest in efficient delivery of services outweighs the interests of the employee in speaking out (the *Pickering* balance). Because the court concludes that Lipsey's comments were not on matters of public concern, the court need not engage in the second balancing step.

In *Connick* the Court reiterated that in deciding whether speech is a matter of public concern, a court should analyze each case on the particular fact situation presented. *Connick*, 103 S.Ct. at 1694. Whether speech is a matter of public concern is determined by the content, form and context of a given statement, *id.* at 1690, but content is often the most important factor. *Yoggerst*, 739 F.2d at 296. Where the speech is not circulated widely but directed to an employee's supervisors, the critical analysis has been to distinguish between expression of matters truly of public concern and expressions of matters which merely continue or create an internal, personal dispute with the employer or supervisor. *Patkus*, 769 F.2d at 1258; *Yoggerst*, 739 F.2d at 296; *cf. Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). As the court stated in *Connick*, 103 S.Ct. at 1690:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Lipsey, in an internal memorandum, directed to his supervisor, defendant O'Connell, complained of being under compensated for "tedious" work. (Ex. A). Lipsey tersely states: "As an employee of the Chicago-Cook County Criminal Justice Commission my immediate needs are very basic, i.e., *money*. Based on my education background, i.e., a law degree, the ability to converse in three different languages, also an instructor in criminal law, I feel that I am *severely underpaid*." (Ex. A, ¶ 2). The next sentence offers the reason, according to Lipsey, why he is not adequately compensated: "Frankly speaking Dan, and I know you are aware of this, if my skin were of a different color there is no question I would be receiving top wages." That statement and its supposed truth supported Lipsey's claim for race discrimination in this court and before the Human Rights Commission. It is also the basis of Lipsey's first amendment claim.

Lipsey argues that he was terminated because he was critical of the agency's policy of race discrimination. He alleges that he, and presumably other blacks in the department, are underpaid because they are black. Speaking out against departmental racism, he contends, is a matter of public concern.

This court is aware that Lipsey's right to protest race discrimination in a department

of state government is a "matter inherently of public concern." *Connick*, 103 S.Ct. at 1691 n. 8. The court is also aware that Lipsey does not forfeit that right when he conveys the message to his superiors in a private forum. *Id.; Givhan*, 439 U.S. at 415–16, 99 S.Ct. at 696–97. The court is not convinced, however, that Lipsey's comments, in the factual setting they were made, took on the character of general allegations of race discrimination practiced in the department or by the department supervisors. The content of the memorandum (cited earlier) reveals that it was made as part of a salary dispute. It does not identify other persons who have been subjected to such treatment. It does not state that there is a department policy that prevents him from getting better assignments, more money, or better working hours. It narrows in on his personal qualifications and interests, and directs his personal dissatisfaction in his compensation to his immediate supervisor and blames his poor pay on his supervisor's racial animus. The dispute is personal; the target is Lipsey's supervisor. Lipsey did not speak "as a citizen upon matters of public concern." *Connick*, 103 S.Ct. 1690; *Gihvan*, 439 U.S. at 415–16, 99 S.Ct. at 696–97.

Lipsey had been subjected to disciplinary actions on two prior occasions. He had been reprimanded for keeping poor records of the time spent on projects. He was away from the office for a week without notice. He felt he was underpaid and his talents poorly utilized. He then sent the memorandum to his supervisor. His supervisor became upset about the memo and asked him for an explanation. He refused to explain his statement. Thereafter, Lipsey was suspended for two days and then terminated. The timing of the memorandum (coming shortly after he had been disciplined), the personal nature of the letter, and Lipsey's refusal to explain what he meant by his allegations of race discrimination all support the conclusion Lipsey was pursuing an employment grievance with his supervisors and not commenting as a citizen on a matter of public concern.

Because we have concluded that Lipsey's comments did not implicate first amendment issues, we need not address the employer's justification for terminating Lipsey. Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.