**David K. GUENTHER,**
**Plaintiff-Appellant,**

v.

**Mark HOLMGREEN and City of Black River Falls, Defendants-Appellees.**

No. 83–3136.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1984.

Decided July 9, 1984.

As Amended July 12, 1984.

Robert J. Mubarak, Carmichael & Mubarak, Tomah, Wis., for plaintiff-appellant.

Gene B. Radcliffe, Radcliffe & Laabs, Black River Falls, Wis., James C. Alexander, Thurow, Sauthoff & Alexander, Madison, Wis., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and GIBSON, Senior Circuit Judge.*

FLOYD R. GIBSON, Senior Circuit Judge.

Plaintiff, David K. Guenther, a resident of Black River Falls, brought this § 1983 damage action claiming his arrest by defendant Mark Holmgreen, a police officer for the defendant city of Black River Falls, was made without probable cause, resulting in his detention in deprivation of his substantive Fourth Amendment rights and his due process rights under the Fourteenth Amendment. The district court, 573 F.Supp. 599, granted defendant's motion for summary judgment, concluding: (1) under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Guenther was not deprived of his liberty without due process of law because post-deprivation state tort remedies were available (viz., actions for false arrest, false imprisonment, and malicious prosecution); (2) Guenther was collaterally estopped from litigating the Fourth Amendment probable cause issue because that issue was decided against him at his preliminary hearing. Guenther claims these two conclusions were erroneous. We affirm.

I.

On July 25, 1982, shortly after midnight, Holmgreen arrested Guenther at a public festival held on the Jackson County Fairgrounds in Black River Falls. In his complaint, Guenther alleged that, just prior to the arrest, he was peaceably minding his own affairs when a fellow festival participant struck him in the mouth. Allegedly, Holmgreen then immediately arrested Guenther, handcuffed him and transported him to the Jackson County Jail, where he was charged with disorderly conduct and resisting arrest, both misdemeanors. Bail was initially set at $400.00, but Holmgreen allegedly refused to accept Guenther's

wife's offer to post that amount. Guenther was later transferred to the Wood County Jail, where bail was accepted at 9:00 A.M. on July 25, 1982. Guenther then left the Wood County jail.

Guenther's attorney moved the state trial court to dismiss the misdemeanor criminal charges against him, claiming a lack of probable cause to arrest. The state trial court held an evidentiary hearing on the probable cause issue, during which Guenther attempted to show that Holmgreen falsified the factual basis for the arrest by relying on events that actually occurred after the arrest. To do this, Guenther's counsel rigorously cross-examined Holmgreen and other state witnesses to the incident, and called a witness to contradict the state's version of the incident. Following this hearing, the trial court determined that there was probable cause to arrest and denied Guenther's motion to dismiss.

After his criminal trial, Guenther was found not guilty of the charge of disorderly conduct; the jury was unable to reach a verdict on the resisting arrest charge. Presumably, the resisting arrest charge was subsequently disposed of in favor of Guenther.

Thereafter, Guenther brought this § 1983 "constitutional tort" action against Holmgreen and the City of Black River Falls. In the district court and on this appeal, Guenther has claimed that the arrest, allegedly made without probable cause and based upon Holmgreen's factual misrepresentations, violated his Fourteenth Amendment right to be secure against unreasonable searches and seizures. Guenther has also claimed he was deprived of liberty without due process of law under the Fourteenth Amendment. Guenther has named the City of Black River Falls as a defendant for its alleged failure to properly train and supervise defendant Holmgreen. On this appeal, Guenther principally challenges the district court's conclusion that he was not denied liberty without due pro-

* The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, is sitting by designation.

cess and that he was collaterally estopped from relitigating the Fourth Amendment probable cause issue, which was determined against him in the state court's preliminary hearing.[1]

## II.

First, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), does not entirely dispose of Guenther's § 1983 claim. In *Parratt,* 451 U.S. at 543–44, 101 S.Ct. at 1916–17, the Supreme Court held that the negligent loss of property by state officials did not present a cognizable § 1983 due process claim when state tort remedies provided adequate relief for the deprivation. The Seventh Circuit has applied *Parratt* to deprivations of life, liberty, as well as property. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871 (7th Cir.1983); *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1147 (7th Cir.1983). The rationale behind *Parratt* is that a victim of a property or liberty deprivation who has recourse to an adequate state remedy has not been denied "due process of law". *Id.; see also* M. Wells and J. Eaton, *"Substantive Due Process and The Scope of Constitutional Torts"* 18 Georgia L.Rev. 201, 211–12 (1984). Hence, as the court stated in *Wolf-Lillie,* 699 F.2d at 871, "[T]he *Parratt* decision ... requires federal courts to consider the adequacy and availability of remedies under state law before concluding that a deprivation of life, liberty, or property violates due process of law", citing *Ellis v. Hamilton,* 669 F.2d 510, 515 (7th Cir. 1982).

■ As the district court properly recognized, there are Wisconsin tort remedies for matters which form the basis of Guenther's claim that he was deprived of liberty without due process of law. Specifically, claims for false arrest, false imprisonment,

and malicious prosecution are all actionable in Wisconsin. *Strong v. City of Milwaukee,* 38 Wis.2d 564, 157 N.W.2d 619, 621–22 (1968); *Elmer v. Chicago and Northwestern Railroad Co.,* 257 Wis. 228, 43 N.W.2d 244 (1950). Presumably, the recovery of consequential damages for these torts would permit compensation for injuries to Guenther's reputation. *See Gladfelter v. Doemel,* 2 Wis.2d 635, 87 N.W.2d 490, 497 (Wis.1958). Because of the availability of these state tort remedies, it could be said that Wisconsin has done all that the Fourteenth Amendment requires in this context to guarantee Guenther procedural due process. *Cf. Camic,* 712 F.2d at 1144; *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

However, Guenther has not merely stated a procedural due process claim; he also has claimed that the arrest, allegedly made without probable cause and based upon Holmgreen's misrepresentation, violated his substantive Fourth Amendment right to be free from unreasonable searches and seizures. Two separate Seventh Circuit panels and various other courts and commentators have recognized that *Parratt* is inapplicable where the plaintiff asserts a violation of substantive constitutional guarantees—e.g., Fourth Amendment protections—as distinguished from a violation of his procedural due process rights. *Wolf-Lillie,* 699 F.2d at 871–72; *Camic,* 712 F.2d at 1147 n. 5; *Duncan v. Poythress,* 657 F.2d 691, 704 (5th Cir.1981); M. Wells & T. Eaton, *"Constitutional Torts"* 18 Georgia L.Rev. at 202, 211–12. Thus far, the Supreme Court has not retrenched from its seminal holding in *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961), that a substantive Fourth Amendment violation gives rise to a cognizable § 1983 action regardless of the exist-

---

1. In the district court, Guenther also claimed his Fifth and Sixth Amendment rights were violated because he was denied the right to contact an attorney by phone after his arrest. The district court rejected this claim, holding that Guenther's right to counsel did not attach until the initiation of adversarial proceedings. *Guenther v. Holmgreen,* 573 F.Supp. at 599, 600 *citing*

*Bank of St. Charles v. Camic,* 712 F.2d 1140, 1144 (7th Cir.1983). Guenther apparently does not challenge this manifestly correct holding. Nor does Guenther challenge the district court's rejection of his damage claim based upon the alleged failure to advise him of his *Miranda* warnings. *Id.*

ence of state tort remedies. *See Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982) (reaffirming *Monroe v. Pape* ).

*Baker v. McCollen,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) is illustrative of the distinction the court has drawn between a general Fourteenth Amendment due process right claim and a substantive Fourth Amendment claim, as alleged in *Monroe v. Pape* and here. In *Baker,* the plaintiff was mistakenly named in a valid arrest warrant and, as a result, spent three days in jail until it was discovered that he was not the person whom authorities had intended to arrest. In denying plaintiff's § 1983 "false imprisonment" claim, the Court stated:

> Absent an attack of the validity of the warrant under which he was arrested, [plaintiff's] complaint is simply that despite his protests of mistaken identity, he was detained in [jail for three days] when the validity of his protests was ascertained. Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. [Plaintiff] was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment.

> . . . . .

> [Plaintiff's] innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation without due process of law. [ ] The Constitution does not guarantee that only the guilty will be arrested. If it did § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.

*Id.* at 143–45, 99 S.Ct. at 2694.

■ In this case, unlike *Baker,* the plaintiff asserts that his arrest was made in bad faith and without probable cause, thereby depriving him of his right to be free from unreasonable seizures as guaranteed by the Fourth Amendment. Accepting these allegations as true, the plaintiff Guenther might have a cognizable § 1983 cause of action for injuries suffered as a result of the illegal, unconstitutional arrest. *See Whitley v. Seibel,* 613 F.2d 682, 685–86 (7th Cir.1980); *Davis v. Murphy,* 559 F.2d 1098, 1100, 1102 (7th Cir.1977); *Joseph v. Rowlen,* 402 F.2d 367, 370 (7th Cir.1968); *Landrigan v. City of Warwick,* 628 F.2d 736, 743 (1st Cir.1980); *Harper v. McDonald,* 679 F.2d 955, 959–60 (D.C.Cir.1982).

■ Recognizing this, defendants have argued and the district court concluded that Guenther was collaterally estopped from litigating the issue of probable cause because that issue was decided against him at his preliminary hearing. Under collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). However, collateral estoppel applies only when the party against whom the earlier decision is being asserted had a "full and fair opportunity" to litigate the issue in question. *Id.; Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481 n. 22, 102 S.Ct. 1883, 1897 n. 22, 72 L.Ed.2d 262 (1982). In *Allen v. McCurry,* 449 U.S. 90, 104–05, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980) the Supreme Court held that collateral estoppel can be invoked against a § 1983 claimant to bar relitigation of his Fourth Amendment search and seizure claim decided against him in a state criminal suppression hearing. *See also Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 2372–73, 76 L.Ed.2d 595 (1983).[2]

2. In *Haring v. Prosise,* the Court, applying Virginia's collateral estoppel law, held that a § 1983 plaintiff's prior guilty plea in a state criminal proceeding did not estop him from bringing an action based upon a warrantless search, since the legality of the search was not actually litigated and necessarily determined in the state proceeding.

In *Whitley v. Seibel*, 676 F.2d 245, 248 (7th Cir.1982), the court, following *Allen*, recognized that the application of the collateral estoppel doctrine to § 1983 claims turns on whether the "traditional" four collateral estoppel requirements have been met: i.e., the issue sought to be precluded must be the same as that involved in the prior judicial proceeding; the issue was litigated in the prior action; the issue was in fact actually determined in the prior proceeding; and the determination of that issue was necessary to support the judgment in the prior proceeding. In *Haring v. Prosise*, 103 S.Ct. at 2373–74, the Court indicated that federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state judicial proceeding. Wisconsin courts have recognized that the collateral estoppel doctrine bars relitigation of an issue that was "litigated, determined, and necessary to the decision in the prior proceeding." *Reckner v. Reckner*, 105 Wis.2d 425, 314 N.W.2d 159, 165 (Wis.App. 1981) *citing State ex rel. Flowers v. DH & SS*, 81 Wis.2d 376, 260 N.W.2d 727, 734 (Wis.1978). The Wisconsin standard is therefore substantially similar to the "traditional" standard set forth in *Whitley* and applied by the district court here. In *Haring v. Prosise*, 103 S.Ct. at 2375, the Court also stated "[a]s a general matter, even when issues have been raised, argued, and decided in a prior proceeding, and are therefore preclusive under state law, [r]edetermination of the issues [may nevertheless be] warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigations." *Quoting Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979); *see also Allen v. McCurry*, 449 U.S. at 95, 101 S.Ct. at 415.

■ Applying the above principles, we believe the district court correctly determined that Guenther's probable cause

claim was precluded by the state court's determination of that claim in the state criminal preliminary hearing. Guenther's § 1983 complaint essentially attacked the legality of the arrest, alleging that the arrest was made without probable cause and based upon Holmgreen's misrepresentations to prosecution authorities. At Guenther's behest, these claims, attacking both the sufficiency and integrity of the evidence supporting probable cause, were raised and actually litigated in the preliminary hearing.[3] At the hearing, Guenther's counsel attacked the legality of the arrest by attempting to show that the events Holmgreen relied on to establish probable cause actually occurred after the arrest had taken place. Guenther thoroughly litigated and challenged the veracity of Holmgreen and the other prosecution witnesses who supplied the bases for probable cause. Specifically, Guenther's counsel rigorously cross-examined Holmgreen regarding his version of the events leading up to arrest and called a witness to rebut Holmgreen's version. The court heard considerable testimony from both sides before making its probable cause determination. There can be little doubt that the issue of Holmgreen's veracity and good faith—the linchpin of Guenther's § 1983 Fourth Amendment claim—was both raised and actually litigated in the preliminary hearing.

Moreover, the state court's determination that there was probable cause to arrest Guenther "actually" and "necessarily" entailed the rejection of Guenther's challenges to Holmgreen's veracity, integrity, and good faith. In *Franks v. Delaware*, 438 U.S. 154, 164–65, 171, 98 S.Ct. 2674, 2680–81, 57 L.Ed.2d 667 (1977), the Supreme Court held that a defendant contesting probable cause for an issued and executed warrant may challenge the veracity and integrity of the warrant affidavit. The court explained that where such challenges are made, the finding of probable cause

---

3. In Wisconsin, a preliminary probable cause hearing is statutorily required, when requested, for felony charges. Wis.Stat. § 970.02(1)(c); *State v. Hooper*, 101 Wis.2d 517, 305 N.W.2d 110, 118 (1981). Guenther received a probable cause hearing after his attorney moved to dismiss the misdemeanor charges for a lack of probable cause.

necessarily requires an evaluation of the truthfulness as well as the sufficiency of the affiant's allegations in support of probable cause. The Court stated, "when the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause', the obvious assumption is that there will be a *truthful* showing." *Quoting United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y.1966). The Court in *Allen v. McCurry,* 449 U.S. at 102 n. 18, 101 S.Ct. at 419 n. 18, apparently recognizing this basic assumption, noted that a "state court decision that the police acted legally [i.e., with probable cause] cannot but foreclose a [§ 1983] claim that they acted in bad faith." [4] In view of *Franks* and *Allen,* the trial court's finding of probable cause to arrest Guenther, having been made only after Guenther had fully challenged Holmgreen's veracity and good faith, necessarily depended on the trial court's determination that Holmgreen had truthfully stated the factual bases for probable cause.

This case is therefore readily distinguishable from *Whitley v. Seibel,* 676 F.2d 245 (7th Cir.1982), where the court held that a probable cause finding made in a summary and cursory criminal preliminary hearing did not estop the defendant from later bringing a § 1983 claim challenging the "integrity, rather than the sufficiency of the evidence" supporting probable cause. Whitley's § 1983 claim alleged that the arresting officer had failed to investigate Whitley's alibi and had misrepresented to prosecuting authorities that he had checked the alibi and found it to be false. However, Whitley's preliminary hearing, unlike Guenther's, was a "summary proceeding", only addressing the sufficiency, not the integrity of the evidence supporting probable cause. Further, Whitley, unlike Guenther, was unable to discover what was in the prosecutor's arsenal or to appeal the

probable cause finding.[5] Finally, and most significantly, unlike Guenther, Whitley, presumably for tactical reasons, never raised or litigated the issue of the arresting officer's veracity during the preliminary hearing; nor did Whitley raise or litigate the issue of his purported alibi witness.

We also conclude that Guenther was given a "full and fair opportunity to litigate" his probable cause challenges in the preliminary hearing. The Supreme Court has recently indicated that to satisfy the "full and fair opportunity to litigate" requirement, the prior state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process clause". *Kremer v. Chemical Corp.,* 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982); *see also Prosise,* 103 S.Ct. 2375; C. Wright, A. Miller & E. Cooper 18 *Federal Practice & Procedure* § 4471 at 707–08 (1981); *id.* at 101–03 (Suppl.1984). And "no single model of procedural fairness, let alone a particular form of procedure is dictated by the Due Process Clause .... 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Kremer,* 456 U.S. at 483, 102 S.Ct. at 1898 (citations omitted).

■ Admittedly, in Wisconsin, a preliminary hearing is typically a summary proceeding designed merely to determine whether there is sufficient evidence to establish a reasonable probability that defendant has committed a crime. *See State v. Hooper,* 101 Wis.2d 517, 305 N.W.2d 110, 121, 123–24 (Wis.1981). And, a Fourth Amendment judicial determination of probable cause need not be accompanied by the full panoply of adversarial-type safeguards —e.g., counsel, confrontation, and cross-ex-

---

4. In *Whitley v. Seibel,* 676 F.2d at 248, the court interpreted *Allen* to mean that: "if a Section 1983 plaintiff must show both that an arrest was illegal and that the arresting officer had no reasonable, good faith belief in its legality, the determination that an arrest is supported by probable cause (and therefore legal) logically undercuts the Section 1983 claim."

5. As the district court in this case recognized, Guenther could have sought an interlocutory appeal of the trial court's probable cause determination. *See State v. Berby,* 81 Wis.2d 677, 260 N.W.2d 798, 802 (1978).

amination of witnesses. *Gerstein v. Pugh,* 420 U.S. 103, 119–21, 95 S.Ct. 854, 865–66, 43 L.Ed.2d 54 (1975). However, Guenther requested and received a much more extensive and probing hearing than required by Wisconsin law or the Fourth Amendment. As mentioned above, Guenther's counsel was permitted to cross-examine Holmgreen and the other state witnesses, and to present his own rebuttal witness in an attempt to impeach the integrity of the evidence supporting probable cause. The hearing Guenther was given compared favorably, in nature and scope, with the full adversarial-type evidentiary hearings countenanced in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1977) and *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). *See Searing v. Hayes,* 684 F.2d 694, 695 (10th Cir.1982) (full and fair opportunity to litigate legality of search met even though plaintiff was denied *Franks* -type evidentiary hearing on the question of the truthfulness of the affiants).

Guenther, however, contends that in order to fully and fairly litigate Holmgreen's veracity, he would have been required to testify at the hearing and directly challenge Holmgreen's version of the events. According to Guenther, he did not testify for fear that he might provide incriminating testimony that could be used against him at trial. He asserts that it would be fundamentally unfair to require him to choose between the meaningful exercise of his Fifth Amendment right against compelled self-incrimination and the full and

fair litigation of his § 1983 Fourth Amendment claims. Although there is no case law directly on point, both parties assume that, under Wisconsin law, the defendant's preliminary hearing testimony could be used against him at trial.[6]

Guenther's argument essentially attempts to raise the concerns that led the Court in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), to hold that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.* at 394, 88 S.Ct. at 976. In *Simmons,* the defendant, in order to assert Fourth Amendment standing to suppress seized evidence, was required to provide testimony that necessarily incriminated him in the possessory crime charged. The defendant's need to choose between waiving the Fifth Amendment privilege and asserting an incriminating interest in evidence sought to be suppressed, or invoking the privilege but thereby forsaking the Fourth Amendment claim of exclusion, created a situation the Court resolved by reasoning "we find it intolerable that one constitutional right should have to be surrendered in order to assert another". *Simmons,* 390 U.S. at 394, 88 S.Ct. at 976. *See also United States v. Kahan,* 415 U.S. 239, 242, 94 S.Ct. 1179, 1180, 39 L.Ed.2d 297 (1974); *McGautha v. California,* 402 U.S. 183, 211–12, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971).[7] The

**6.** In *Neely v. State,* 97 Wis.2d 38, 292 N.W.2d 859, 867 (1980), the Wisconsin Supreme Court dealt with the possible use of a defendant's criminal trial testimony in his subsequent but related criminal trial. The Court held, "[e]xcept where the defendant is impelled to testify in order to meet evidence introduced against him in violation of his constitutional rights, the general rule is that a defendant's testimony at another trial is admissible against him in a later proceeding". *Citing Harrison v. United States,* 392 U.S. 219, 222–26, 88 S.Ct. 2008, 2010–12, 20 L.Ed.2d 1047 (1968).

**7.** The Supreme Court has not decided whether *Simmons* precludes the use of a defendant's suppression hearing testimony to impeach his

trial testimony. *See United States v. Salvucci,* 448 U.S. 83, 93–94, 100 S.Ct. 2547, 2553–54, 65 L.Ed.2d 619 (1980). However, a number of state and federal courts have held that a defendant's suppression hearing testimony, though inadmissible to prove guilt, may be admissible for impeachment of defendant's trial testimony. *See id.* at 448 U.S. at 93, n. 8, 100 S.Ct. at 2553, n. 8. *See also, United States v. Gomez-Diaz,* 712 F.2d 949, 951 (5th Cir.1983).

Further, neither the United States Supreme Court nor the Wisconsin Supreme Court has decided how the *Simmons* rule of testimonial immunity may apply to pre-trial hearings other than a suppression hearing—such as an arraignment or a preliminary hearing. However in *Pederero v. Wainwright,* 590 F.2d 1383, 1388 n. 3

*Simmons* rule was thus essentially hinged on the important policies underlying the Fifth and Fourth Amendments: a criminal defendant should not be forced to give up his privilege against compelled self-incrimination in order to pursue a Fourth Amendment right to be free from unreasonable searches and seizures. However, as the Supreme Court has also recognized, "the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights'". *Jenkins v. Anderson*, 447 U.S. 231, 236, 100 S.Ct. 2124, 2128, 65 L.Ed.2d 86 (1980); *see also McGautha v. California*, 402 U.S. at 213, 91 S.Ct. at 1470. ("Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token, always forbid requiring him to choose.")

 In litigating his claims at the preliminary hearing, Guenther was clearly not faced with the harsh dilemma the defendant faced in *Simmons*. First, Guenther's possible testimony at the preliminary hearing would have been essentially exculpatory, rather than necessarily incriminatory, with respect to the crimes charged. Presumably, Guenther would have provided testimony rebutting the state's testimony that there was sufficient grounds to arrest him. His choice to testify or not regarding the probable cause issue at the preliminary hearing was no harder than the choice a defendant typically faces when deciding whether to testify on his own behalf at trial.[8] We thus reject the notion that Guenther's decision to testify at the hearing would have compelled him to incriminate himself. Furthermore, considering the matter obversely, we do not believe that Guenther's failure to testify prevented him from asserting and pursuing his Fourth Amendment claims. At the hearing, Guenther not only rigorously cross-examined Holmgreen but also produced a witness who rebutted Holmgreen's version of the events. At most, Guenther's possible testimony would have served to corroborate his rebuttal witnesses' testimony.

 Guenther also challenges application of collateral estoppel on the grounds that the standard for probable cause in a criminal proceeding is somehow different from or less stringent than the standard for probable cause in a § 1983 action. Guenther misapprehends the law. The probable cause standard in both the criminal proceeding and the constitutional tort case is the same—viz., whether the facts and circumstances were sufficient to warrant a reasonable person in believing that the suspect had or was committing a crime. *See Banish v. Locks*, 414 F.2d 638, 641 (7th Cir.1969); *Stelloh v. Liban*, 21 Wis.2d 119, 124 N.W.2d 101, 103–04 (Wis.1963) (applying criminal probable cause standard in tort action for false arrest and imprisonment); *see also Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); *Gerstein v. Pugh*, 420 U.S. at 111, 120–21, 95 S.Ct. at 861, 866. As the

(5th Cir.1979), the Court, relying on *Simmons* held that a defendant could have fully testified at his arraignment in support of his insanity or incompetence claim without fear that such testimony could be used at his state criminal trial.

8. The choice facing Guenther does not appear to be harder than the choice facing the defendant in *McGautha v. California*, 402 U.S. 183, 210–217, 91 S.Ct. at 1468–1472 (1971). In that case, the defendant, charged with murder, contended that his right to remain silent was burdened unconstitutionally because he could not testify for mitigation of punishment without risking incrimination on the question of guilt. The Court recognized that a defendant who takes the stand on his own behalf must testify fully and answer questions on cross-examinations that are reasonably related to the subject rather of his direct examination.

The Court held:
It is not thought overly harsh in such situations to require that the determination to waive the privilege take into account the matters which may be brought out on cross-examination....

....

We conclude that the policies of the privilege against compelled self-incrimination are not offended when a defendant in a capital case yields to the pressure to testify on the issue of punishment at the risk of damaging his case on guilt.
*Id.* at 215, 217, 91 S.Ct. at 1471, 1472.

Court stated in *Pierson v. Ray*, 386 U.S. at 555, 87 S.Ct. at 1218, "a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved .... A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." Furthermore, to succeed in a § 1983 action based upon the Fourth Amendment, the plaintiff must prove not only that the arrest was illegal—i.e., without probable cause—but also that the arresting officer had no reasonable good faith belief in its legality. *Whitley v. Seibel I*, 613 F.2d at 685; *Whitley v. Seibel II*, 676 F.2d at 248; *Brubaker v. King*, 505 F.2d 534, 537 (1974) (§ 1983 standard of reasonableness imposed lesser burden on arresting officers than did the criminal standard of probable cause). Accordingly, as the Supreme Court noted in *Allen v. McCurry*, 449 U.S. 90, 102 n. 18, 101 S.Ct. 411, 419 n. 18, 66 L.Ed.2d 308, a state court's finding that the arrest was legal—i.e., supported by probable cause—would foreclose a § 1983 claim that the arresting officer acted in bad faith. *See also Whitley v. Seibel II*, 676 F.2d at 248; *Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir.1982).

 In a closely related argument, Guenther suggests that collateral estoppel should not apply because the state's burden of evidentiary proof in the criminal proceeding is less than the burden it must shoulder with respect to a § 1983 cause of action. It is, of course, well established that issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required. *See* 18 C. Wright, A. Miller, & E. Cooper *Federal Practice and Procedure* § 4422 at 209 (1980). For example, the failure to carry a higher standard of proof does not preclude a subsequent attempt to satisfy a lower standard. *Id.; One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (government's failure to prove an issue beyond a reasonable doubt in a criminal prosecution does not preclude a subsequent attempt to prove the same issue by a preponderance of the evidence in a civil action). However, it is also well established that if one party has carried the burden of proving an issue in the first proceeding, a favorable determination on that issue is binding in later litigation in which the burden of proving the contrary would be on his adversary. *Id., Federal Practice* at 213 n. 7.

 In the criminal proceeding here, the state assumed the initial burden of producing sufficient evidence to establish a reasonable probability that Guenther had committed a crime. *Lofton v. State*, 83 Wis.2d 472, 266 N.W.2d 576, 579 (1978); *Wendricks v. State*, 72 Wis.2d 717, 242 N.W.2d 187, 191 (1976) (state must show quantum of evidence which would lead a reasonable police officer to believe that defendant probably committed a crime). By finding the arrest was based upon probable cause and, thus, legal, the court determined that the state had satisfied this evidentiary burden. In this § 1983 action, the plaintiff, Guenther, has the burden of proving all the elements of his § 1983 Fourth Amendment claim by a preponderance of the evidence. *See* Sheldon H. Nahmod, *Civil Rights & Civil Liberties Litigation* at 61 (1979); *Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Specifically, Guenther shoulders the burden of proving that the arrest was made without probable cause, thereby depriving him of rights secured by the Fourth Amendment. *See Whitley v. Seibel I*, 613 F.2d at 682; *Whitley v. Seibel II*, 676 F.2d at 248. (§ 1983 plaintiff assumes burden of showing that arrest was illegal—i.e., without probable cause—and that the arresting officer had no reasonable good faith belief in its legality). Thus, Guenther, now assuming a greater burden of proof than he had in the state criminal proceeding, can not avoid the preclusive effect of the state court's determination on grounds of different or shifting standards of evidentiary proof. Our conclusion here

is consistent with the Supreme Court's recognition in *Allen v. McCurry*, 449 U.S. at 102 n. 18, 101 S.Ct. at 419 n. 18, that a state court's finding that the police acted legally—i.e., with probable cause—would foreclose a § 1983 claim that they had acted in bad faith. *See also Whitley v. Seibel II*, 676 F.2d at 248.

We conclude by noting that since Guenther invited a state criminal proceeding which permitted him to fully and fairly litigate both the sufficiency and the integrity of the evidence supporting probable cause, the policies underlying the collateral estoppel doctrine—judicial economy and consistency of judgments—would be frustrated if we were to permit him to relitigate those claims in federal court. In passing § 1983, "[Congress did not intend] to allow relitigation after a full and fair hearing simply because the state court's decision may have been erroneous." *Allen v. McCurry*, 449 U.S. at 101, 101 S.Ct. at 418.

We should add that the state court's determination of probable cause estops Guenther from raising any Fourteenth Amendment due process claim based upon general tort theories of false arrest, false imprisonment, and malicious prosecution.[9] It is undisputed that, under Wisconsin law, an essential element of claims for false arrest, false imprisonment, and malicious prosecution is that arrest, imprisonment, or prosecution be undertaken without probable cause.[10] Thus, to the extent that Guenther's § 1983 general due process claim is predicated on allegations of false arrest, false imprisonment, or malicious prosecution, it would be precluded by the state court's determination of probable cause. *See Terket v. Lund*, 623 F.2d 29, 31 (7th Cir.1980).

Judgment affirmed.

9. We mention this only because Guenther has tied his general Fourteenth Amendment claim (i.e., that he was deprived of liberty without due process) to his Fourth Amendment claim that the arrest was made without probable cause.

10. *See Stelloh v. Liban*, 21 Wis.2d 119, 124 N.W.2d 101 at 102-04 (1963); *Brownsell v. Klawitter*, 102 Wis.2d 108, 306 N.W.2d 41, 43 (Wis.1981).