**James W. McCRIMMON, et al., Plaintiffs,**

**v.**

**KANE COUNTY, etc., et al., Defendants.**

**No. 83 C 7884.**

United States District Court, N.D. Illinois, E.D.

Feb. 20, 1985.

Herbert Hill, Aurora, Ill., for plaintiffs.

Patricia Johnson Lord, Asst. State's Atty., Geneva, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

James McCrimmon ("McCrimmon") and Terri Gillis ("Gillis") filed this 42 U.S.C. § 1983 ("Section 1983") action against Kane County ("County"), its Sheriff George Kramer ("Kramer"), Deputy Sheriff Kenneth Ramsey ("Ramsey") and other Deputies ("Deputies"), County's State's Attorney's Office ("Office"), State's Attorney Robert Morrow ("Morrow") and Assistant State's Attorneys Gary Johnson ("Johnson") and John Barsanti ("Barsanti"). Plaintiffs seek compensatory and punitive damages for alleged violations of their Fourth and Fourteenth Amendment rights in connection with a search of premises in Aurora Township and the later filing of various state charges against plaintiffs. Defendants now move under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss the Complaint in its entirety for failure to state a claim on which relief can be granted. For the reasons stated in this memorandum opinion and order, that motion is granted in part and denied in part.

### Facts[1]

At 2:45 a.m. November 7, 1981 Ramsey and unidentified Deputies executed a warrant (the "Warrant," Pl. Mem. Ex.) for the search of a house owned by plaintiffs at 151 Edgewood in Aurora Township. Be-

---

**1.** As always with respect to a motion to dismiss, the well-pleaded factual allegations of the Complaint are taken as true, with all reasonable factual inferences drawn in plaintiffs' favor.

*Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984). That approach of course involves no actual findings of fact.

cause issuing Judge John Krause had found probable cause to suspect gambling and the keeping of a gambling place on the premises, the Warrant authorized a search of the entire house and of any persons found there. In addition the officers were authorized to seize:

> Gambling devices, paraphernalia used in the act of gambling, cash monies, liquor to be sold at retail, documentation reference liquor sales, documentation reference gambling activities and proceeds, indicia of residency.

As the return on the Warrant reflected, the officers did seize a felt-covered table, dice and a dice cup, a juke box and other items contemplated by the Warrant's terms. But the return did not reflect the seizure of (1) $1,000 cash in a sealed envelope and a pair of diamonds (both items found in a drawer in Gillis' bedroom) or (2) a 1973 Kawasaki motorcycle discovered when the officers extended their search from the house to an unattached garage. Moreover the officers damaged the garage in the process of gaining entry. Various items of food and beverage were destroyed during the search of the house. In conjunction with their execution of the Warrant the officers arrested 63 persons, including plaintiffs, on gambling charges.

Each plaintiff was charged with (1) distribution of alcoholic liquor without a license, (2) keeping a gambling place and (3) maintaining a public nuisance. In addition McCrimmon was charged with unlawful possession of a motor vehicle. Plaintiffs—then defendants—moved in Kane County Circuit Court for a dismissal of all charges against them. That motion was granted and the property seized pursuant to the Warrant returned to plaintiffs (excluding presumably such contraband items as containers of suspected marijuana and cocaine). But the $1,000 cash, diamond earrings and motorcycle were not returned.

Nearly one year to the day after they filed their original complaint in this action, plaintiffs filed a four-count First Amended Complaint (the "Complaint"), which is the focus of the present motion. Count I charges County, Kramer, Ramsey and Deputies with violations of plaintiffs' rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses in connection with the execution of the Warrant. Count II charges the same defendants with constitutional violations in the arrest of, and filing of charges against, plaintiffs. Count III claims a conspiracy on the part of the same defendants to prosecute charges against plaintiffs as alleged in Count II. Count IV asserts Fourteenth Amendment violations by Johnson, Barsanti, Morrow and Office in the execution of the Warrant.[2]

### Count I

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) states the operative considerations here:

> Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Defendants do not deny they acted under color of state law in searching plaintiffs' house. Rather they contend plaintiffs have failed to allege any deprivation of their Fourteenth Amendment rights to equal protection and due process.

■ Defendants are right as to the alleged equal protection violation. As *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir.1970) teaches:

> The Equal Protection Clause has long been limited to instances of purposeful or

---

**2.** This Court's April 3, 1984 memorandum opinion and order denied County's motion to dismiss under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). That denial was based on the reasoning set out in *Padilla v. D'Avis*, 580 F.Supp. 403, 406 (N.D.Ill. 1984).

invidious discrimination rather than erroneous or even arbitrary administration of state powers. The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.

Of course an individual alleging purposeful discrimination on the part of state officials may constitute a "class" of one for equal protection purposes. But absent allegations of deliberately having been singled out for disparate treatment from others similarly situated, a plaintiff fails to state an equal protection claim. No facts in the Complaint depict McCrimmon and Gillis as victims of such intentional or purposeful discrimination. While improper execution of the Warrant represented erroneous and arbitrary conduct by state officials, there is nothing to indicate that conduct was motivated by purposeful disparate treatment. Contrast *Ossler v. Village of Norridge*, 557 F.Supp. 219, 223–24 (N.D.Ill.1983).

■ Plaintiffs' Count I due process claim requires a bit more analysis. Leaning heavily on *Parratt*, 451 U.S. at 543–44, 101 S.Ct. at 1916–17, defendants' Count I Mem. 7 argues plaintiffs have alleged no Fourteenth Amendment violation in that respect (emphasis in original):

> In the case at hand, plaintiffs do not allege that they were not given a hearing and an opportunity to be heard regarding the deprivations alleged in their Complaint.
>
> * * * * * *
>
> Nor can plaintiffs assert that they should have been given a hearing *prior* to the execution of the search warrant.

But plaintiffs claim more than a violation of their procedural rights. They assert (see Complaint ¶ 2) the execution of the

search—in particular its extension to the garage, the seizure of property not contemplated by the Warrant and the destruction of certain property in the course of the search—violated their right to be free from unreasonable searches and seizures.[3] That Fourth Amendment guaranty is made applicable to the states through the due process clause of the Fourteenth Amendment. And as *Guenther v. Holmgreen*, 738 F.2d 879, 882–83 (7th Cir.1984) teaches (citations omitted):

> *Parratt* is inapplicable where the plaintiff asserts a violation of substantive constitutional guarantees—e.g., Fourth Amendment protections—as distinguished from a violation of his procedural due process rights.... Thus far, the Supreme court has not retrenched from its seminal holding in *Monroe v. Pope*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961), that a substantive Fourth Amendment violation gives rise to a cognizable § 1983 action regardless of the existence of state tort remedies.

Thus the question is whether the alleged extension of the search beyond the Warrant's authority was unreasonable in Fourth Amendment terms. While the $1,000 cash falls within the express terms of the Warrant, the diamond earrings and the motorcycle do not.[4] If officers armed with a duly issued search warrant could disregard its limitations with impunity in deciding what to seize, the constitutional guaranty (see *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)) would be impermissibly diluted. Defendants have not even advanced an argument that the seizures were reasonable. Indeed the reasonableness inquiry itself poses questions of fact irresolvable on a Rule 12(b)(6) motion. By the same

---

**3.** Plaintiffs' Mem. 3,6 suggests the Warrant itself was invalid. No allegation to that effect appears in Complaint Count I, nor have plaintiffs alleged facts raising even a hint of such invalidity. This opinion must deal with plaintiffs' claims as pleaded, not with their by-the-way characterizations of those claims.

**4.** None of those items has been returned to plaintiffs even though the charges against plaintiffs have been dismissed. Any Fourth Amendment violation connected with the seizure of those items is thus continuing. Of course were plaintiffs suing only to recover items seized pursuant to a lawful search, their claim would be subject to *Parratt* attack, for they have a remedy in that respect under Illinois law. See n. 5.

token, while damage to property may be unavoidable in the execution of a search warrant (*Dalia v. United States*, 441 U.S. 238, 258, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979)), it too must be measured by standards of reasonableness.

In short, it is not clear from the Complaint that plaintiffs can prove no set of facts indicating unreasonable execution of the Warrant. Under the liberal pleading standard of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), recently reaffirmed in *Hishon v. King & Spalding*, —— U.S. ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), defendants' motion must be denied as to the Count I due process claims.[5]

### Count II

Unlawful arrest and detention will support a remedy under Section 1983 if they entail constitutional deprivations perpetrated under color of state law. *Joseph v. Rowlen*, 402 F.2d 367, 370 (7th Cir.1968). That last element—under color of state law—is assuredly present. Accordingly the only question is whether plaintiffs make sufficient allegations of unconstitutional arrest—arrest, that is, without probable cause, thus infringing rights under the Fourth Amendment (via the Fourteenth).

On that score plaintiffs allege they were not engaged in the commission of any offense at the time of their arrest. But that is not the standard (*Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979)):

> The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.

Instead the arresting officer need only have probable cause to believe the suspect's conduct violated the law (*id.*). Moreover for a Section 1983 claim based on false arrest or malicious prosecution (*Lenard v. Argento*, 699 F.2d 874, 884 (7th Cir.1983) quoting *Brubaker v. King*, 505 F.2d 534, 536–37 (7th Cir.1974)):

> This court has held that under a charge of a § 1983 violation, the test is ". . . not whether the arrest was constitutional or unconstitutional or whether it was made with or without probable cause, but whether the officer believed in good faith that the arrest was made with probable cause and whether that belief was reasonable."

Plaintiffs have made no allegations indicating a lack of probable cause. In fact the discovery on the premises of 63 people, a craps table and other gambling paraphernalia, and substantial amounts of hard liquor and beer obviously gave the arresting officers reason to suspect plaintiffs were engaged in the offenses of gambling and keeping a gambling place (Ill.Rev.Stat. ch. 38, ¶¶ 28–1, 28–3) as set out in the Warrant. Nor have plaintiffs alleged anything even approaching the *Lenard* standard. And under *DeFillippo* the later dismissal of the charges against them does not itself invalidate the arrest.

In much the same way, plaintiffs' allegations of unreasonable detention incident to the arrest are insufficient to state a constitutional claim. Plaintiffs simply say they "were deprived of liberty for a substantial period of time." In the absence of allegations indicating a lack of probable cause for arrest, that vague assertion, even under the liberal *Conley-Hishon* standard, does not state a claim for unconstitutional detention.

That is enough to sustain the present motion. However, the prospect of replead-

---

5. Plaintiffs do have a state action for recovery of the cash, earrings and motorcycle—the only objects seized that have not been returned. See *Keen v. City of Chicago*, 130 Ill.App.2d 300, 264 N.E.2d 721 (1st Dist.1970) (action in detinue to recover property seized in the course of a search). But *Parratt* does not preclude plain-

tiffs' Section 1983 action because of the mere availability of that partial remedy. Because the property was seized in violation of substantive Fourth Amendment rights (and indeed continues to be held), plaintiffs may proceed under Section 1983.

ing justifies a bit more elaboration (among other reasons, to minimize the risk of a possible Rule 11 claim if plaintiffs try again). Eugene Buldak, director of the Kane County Corrections Complex, has submitted an affidavit indicating that as a result of their November 7 arrests (1) Gillis was never incarcerated and (2) McCrimmon spent a total of an hour and fifteen minutes in jail on two occasions well after the date of his arrest—from 10:35 a.m. to 10:50 a.m. on November 11, 1981 and from 9 a.m. to 10 a.m. on December 1. Plaintiffs neither challenge that evidence nor allege facts indicating substantial detention at the time of their arrest. Rule 11 makes "probable cause" of a different kind (the plaintiffs' and their lawyer's "probable cause" to assert a claim) relevant if, under such circumstances, plaintiffs were to reallege a deprivation of liberty sufficient in Fourth Amendment terms to sustain a Section 1983 claim for false arrest.[6]

As to plaintiffs' malicious prosecution claim, *Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836, 845 (7th Cir.1984) has recently again outlined the applicable considerations:

> Whether abuse of legal process or malicious prosecution rises to the level of a constitutional violation actionable under 42 U.S.C. § 1983 depends on whether, "acting under color of state law, the defendant has subjected the plaintiff to a deprivation of constitutional magnitude." *Hampton v. Hanrahan,* 600 F.2d [600, 630 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) ]. However, "conduct which merely engenders common law

tort liability, without infringing on constitutionally protected interests, is not a sufficient basis to support a cause of action under Section 1983." *Beker Phosphate Corporation v. Muirhead,* 581 F.2d 1187, 1189 (5th Cir.1978). "[T]he common law tort of misuse of legal procedure, without more, does not rise to the level of Constitutional wrong remedied by Section 1983." *Id.*

Plaintiffs clearly have the burden of alleging a deprivation of constitutional proportions in connection with the prosecution of charges against them.

In an effort to do so, plaintiffs assert the charges against them were brought "in order to 'cover-up' and justify the unlawful confiscation and theft of Plaintiffs' property." They identify no particular constitutional deprivation in connection with that conduct, simply stating plaintiffs "were denied their right to be free from malicious prosecution by persons acting under color of state law in violation of 42 U.S.C. § 1983." In the face of that legally nonsensical statement, yet mindful of the *Conley-Hishon* mandate to construe a complaint liberally, this opinion proceeds on the assumption plaintiffs are claiming a violation of their Fourteenth Amendment right to due process.[7]

In this Circuit *Parratt* has been held applicable to claims like plaintiffs'. *Guenther,* 738 F.2d at 882–83 indicates a general Fourteenth Amendment due process claim falls within the ambit of *Parratt,* while a substantive Fourteenth Amendment due process claim (for example, one implicating First or Fourth Amendment rights) does

---

**6.** To the extent plaintiffs ground their Section 1983 action for false arrest exclusively on their right to due process under the Fourteenth Amendment (rather than on their incorporated Fourth Amendment rights), our Court of Appeals has stated the *Parratt* rationale applies. *Guenther,* 738 F.2d at 882. Because Illinois provides a tort remedy for claims of false arrest, Illinois "has done all that the Fourteenth Amendment requires in this context to guarantee ... procedural due process" (*id.*). See also the discussion of plaintiffs' malicious prosecution claims immediately following in the text of this opinion.

**7.** As an added possibility (certainly not clear from the Complaint), plaintiffs may also be claiming the institution of charges violated their Fourteenth Amendment right to equal protection of the laws. Such a claim has no foundation (see the earlier discussion of plaintiffs' Count I allegations). Indeed the thrust of plaintiffs' *Monell* claim on the malicious prosecution count is that they were treated in the same way as every other person who had been subjected to an illegal search.

not. Plaintiffs make no allegations suggesting a substantive violation in connection with the filing of charges against them. At most they have undertaken something of a bootstrapping operation, seeking to found their malicious prosecution claim on the alleged constitutional violations connected with the search. But even if defendants had hoped that, as a by-product of the prosecution, any irregularities in the execution of the Warrant would be overlooked, that would not make the prosecution constitutionally suspect in Section 1983 terms—at least in the absence of allegations indicating defendants did not believe in good faith they had cause otherwise to bring the charges. *Lenard,* 699 F.2d at 884.

Plaintiffs' malicious prosecution claim thus states only a general due process claim subject, under *Guenther,* to analysis in *Parratt* terms. This Court must therefore first consider whether plaintiffs have sufficiently alleged a deprivation of life, liberty or property. See *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871 (7th Cir.1983). If that question is answered "yes," the next step will be to consider whether plaintiffs have an adequate remedy under state law (*id.*).

There can be no doubt of an affirmative answer to the first question, at least in pleading terms. McCrimmon (though not Gillis) suffered a liberty deprivation, spending a total of 1 hour and 15 minutes in jail on two occasions following his arrest. While the precise circumstances of those detentions do not emerge from the Complaint, it is entirely possible they were connected with the filing of charges against McCrimmon. So, too, plaintiffs have adequately alleged they were deprived of prop-

erty seized during the search for longer than would have been the case had charges not been filed. Some of that property has yet to be returned, and plaintiffs may be able to prove the charges were brought in the hope the disappearance of the earrings, cash and motorcycle would get lost in the shuffle. Finally, plaintiffs allege they have incurred attorneys' fees in fighting the unlawful prosecution. Inasmuch as defendants' allegedly malicious filing of charges imposed those expenses on plaintiffs—expenses they might recover as compensatory damages were they to prevail in a state action for malicious prosecution—the fees also represent a property deprivation.

However, plaintiffs' liberty and property interests have not been infringed without due process of law. *Guenther,* 738 F.2d at 882, makes plain that under *Parratt* the availability of a state tort remedy for malicious prosecution satisfies the Fourteenth Amendment due process requirement. Illinois recognizes an action for damages proximately caused to person, property or reputation by an unsuccessful criminal proceeding prosecuted without probable cause and with malice. *Freides v. Sani-Mode Manufacturing Co.,* 33 Ill.2d 291, 295, 211 N.E.2d 286, 288 (1965). By resort to their state law remedy plaintiffs are in a position to recover for any harm suffered as a consequence of defendants' conduct. Accordingly they have not been denied their general right to due process under the Fourteenth Amendment and are consequently unable to state a claim for malicious prosecution under Section 1983. See also *Bretz v. Kelman,* 722 F.2d 503, 505–06 (9th Cir.1983).[8]

---

**8.** This result, though plainly compelled in our Circuit by *Guenther,* is still an open matter in Supreme Court jurisprudence. For a concise discussion of the problems it raises—or, its critics say, overlooks—see Judge Fletcher's dissenting opinion in *Bretz,* 722 F.2d at 506–07. And for a more extended analysis, the application of which to this case would lead to a different result, see Wells & Eaton, *Substantive Due Process and the Scope of Constitutional Torts,* 18 Georgia L.Rev. 201 (1984). This Court's colleague Judge Moran accurately predicted our

Court of Appeals' view of the matter in his well-considered discussion in *Koch v. Schneider,* 550 F.Supp. 846, 850–52 (N.D.Ill.1982). As in this case, the key question in *Koch* was the current authority of our Court of Appeals' decision in *Hampton.* That case implied—but without any specific discussion—that malicious prosecution was actionable under Section 1983 where the prosecution was designed to cover-up a prior constitutional deprivation. *Hampton,* 600 F.2d at 622, 630. Judge Moran questioned

In summary, the Count II claims cannot survive for varying reasons. That Count is dismissed in its entirety.[9]

### Count III

█ Count III, really an extension of Count II, alleges a conspiracy among defendants "to 'cover-up' the Defendants' destruction, confiscation and theft of Plaintiffs' property, and focus attention away from said acts" (Complaint ¶ 31, incorporating Paragraph 33 of the original complaint). Whatever plaintiffs' purposes *in* adding the conspiracy count—to expand the scope of liability, to bolster their allegations of malice or otherwise—they have no relevance except as appendages to plaintiffs' malicious prosecution claim. Because that claim may not go forward on the present allegations, Count III founders as well.[10]

### Count IV

Plaintiffs try to cast the net of liability still wider by stating a cause of action against Johnson and Barsanti for their role in execution of the Warrant. Both were present at the time of the raid on plaintiffs' house, and according to Complaint ¶ 35 they "advised, allowed, permitted, condoned and acquiesec [sic] in the knowingly unlawful extension of a search warrant into impermissible areas contrary to the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States." Barsanti and Johnson respond they are absolutely immune from liability under *Imbler v. Pachtman*, 424 U.S. 409, 430–31 & n. 33, 96 S.Ct. 984, 994–95 & n. 33, 47 L.Ed.2d 128 (1976). At

the very least they claim to have acted in good faith and to be entitled to a qualified immunity from Section 1983 liability.

█ *Imbler, id.* at 427, 96 S.Ct. at 993, held a prosecutor, in his role as advocate for the State, is absolutely immune from suit under Section 1983. But the Court expressly refrained from deciding whether such broad immunity extends to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate" (*id.* at 430–31, 96 S.Ct. at 994–95). For that purpose, the prosecutor's advocacy role, rather than the role of investigator, embraces such preparatory activities as "the obtaining, reviewing, and evaluating of evidence" (*id.* at 431 n. 33, 96 S.Ct. at 995, n. 33). Barsanti and Johnson claim their involvement in the search falls within that provision, not within the ambit of *Hampton*, 600 F.2d at 631–32, which held a prosecutor acting qua investigator was entitled only to a qualified immunity.

Count IV alleges Barsanti's and Johnson's conduct during the search was largely passive: They "advised, allowed, permitted, condoned and acquiesed." Read broadly, however, those allegations could charge the prosecutors' active participation in the conduct of the raid. They may have functioned more as Sheriff's deputies than as Assistant State's Attorneys. If so, they may be entitled to no more than qualified immunity under both *Imbler* and *Hampton*. Plaintiffs must be given an opportunity to prove the extent and nature of the

---

whether that implicit holding—if it were a holding at all—survived more recent cases specifically addressing the relationship between Section 1983 and "traditional common law torts for which there are obvious and adequate state court remedies." *Koch*, 550 F.Supp. at 851. *Guenther* indicates—though again not definitively—that the *Hampton* holding does not survive.

9. Defendants have made two added alternative motions challenging Count II. They urge (1) plaintiffs have failed to allege the requisite elements of malicious prosecution and (2) plaintiffs' allegations of malicious prosecution are

insufficient as against County, Kramer, Ramsey or Deputies. Because Count II fails in any event, those alternative motions need not be addressed.

10. This opinion therefore need not resolve the parties' dispute over the adequacy of the Complaint's allegations purporting to include County and Kramer in the conspiracy on account of "their policies and customs of ignoring misbehavior such as complained of here, with knowledge that it would deprive Plaintiffs of their rights..." (Complaint ¶ 33, incorporating Paragraph 35 of the original complaint).

prosecutors' involvement in execution of the Warrant.

 If Barsanti and Johnson may claim only a qualified immunity, plaintiffs must allege and prove the prosecutors did not act in good faith. *Lenard,* 699 F.2d at 884. Both prosecutors have submitted affidavits reflecting good faith actions, at least so far as the extension of the search to the unattached garage was concerned. But a Rule 12(b)(6) motion limits this Court to the facts as stated in the Complaint.[11] It is not clear plaintiffs will be unable to prove any set of fact supporting Barsanti and Johnson's lack of good faith as to the illegal aspects of the search. For the moment— though admittedly it may turn out to be a brief one—Barsanti and Johnson must remain as defendants.

 Plaintiffs' attempt to draw Morrow and Office into the suit turns on the allegation that Morrow did not train his employees to respect the constitutional guaranty against unreasonable searches and seizures. That allegation is not so well-crafted as one might like, but it conveys clearly enough the claim that Morrow, through poor training, hiring and supervision, has encouraged Assistant State's Attorneys routinely to become involved in illegal searches. That allegation (1) identifies a policy or custom and (2) indicates how it caused the complained-of behavior and plaintiffs' resulting harm. It suffices to state a claim under *Monell* against Morrow.[12] See *Padilla,* 580 F.Supp. at 406. Of course the vagueness of plaintiffs' allegations raises doubt as to whether their claim can survive anything more than a

Rule 12(b)(6) motion, but that is all they must do at present (subject again to the caveat in n. 11).

### Punitive Damages

 Defendants have moved to strike plaintiffs' punitive damages claims against Morrow and Kramer in their official capacities and against County. Defendants correctly observe that after *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981), a local governmental body is immune from punitive damages under Section 1983. Moreover, the suits against Morrow and Kramer in their official capacities are merely suits against County, *Wolf-Lillie,* 699 F.2d at 870, so the punitive damages claims against them must be dismissed as well.

### Shotgun Naming of Defendants

Finally defendants seek to dismiss the Complaint against 19 Sheriff's officers whose names were added on amendment of the original complaint. It appears that rather than refer to unknown deputies who participated in the search with Ramsey, plaintiffs have chosen to name all officers who work for Kramer. Accordingly defendants' motion is granted as to any of the named officers who did not participate in the execution of the Warrant. Department is ordered to supply a list of those officers to plaintiffs on or before March 4, 1985.

### Conclusion

Defendants' motion to dismiss is denied as to:

11. This Court of course recognizes its right (but not the obligation) to convert a Rule 12(b)(6) motion into one for summary judgment (see the last sentence of Rule 12(b)). Because this action is still in the discovery stages, this Court has elected not to do so. See *Grove School v. Guardianship and Advocacy Comm'n,* 596 F.Supp. 1361, 1363 n. 4 (N.D.Ill.1984). However, plaintiffs and their counsel must be mindful of their responsibilities under Rule 11, already suggested somewhat cryptically in the text at n. 6. See *In re Ronco,* 105 F.R.D. 493, 494–97 (N.D.Ill.1985). If at any point they can no longer advance their claim against the prosecutors (or any other surviving claim) in good con-

science (determined objectively, not as a matter of conscious bad faith), they will become duty bound to abandon that claim on peril of "appropriate sanctions" under Rule 11.

12. Morrow, as State's Attorney, is a Kane County officer, not an officer or agent of the State of Illinois. See 4 I.L.P. Attorney General & State's Attorneys § 2, at 3. But there is no such legal entity as the "State's Attorney's Office," as distinct from the State's Attorney himself. Ill. Const. art. 6, § 19. Consequently Office is dismissed from this action.

1. plaintiffs' Count I unreasonable search and seizure claims; and

2. plaintiffs' Count IV claims against Barsanti, Johnson and Morrow.

Defendants' motion to dismiss is granted as to:

1. plaintiffs' Count I equal protection claims;

2. Count II in its entirety;

3. Count III in its entirety;

4. plaintiffs' claims for punitive damages against (a) Morrow and Kramer in their official capacities and (b) County;

5. Office; and

6. any Deputies who did not participate in execution of the Warrant.

Defendants are ordered to answer the surviving portions of the Complaint on or before March 4, 1985.